UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

NICOLE ROBBINS,

Plaintiff,

v.

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, LOCAL 492,

Defendant.

Civil Action No. _____

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

(Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*)

**JURY TRIAL DEMANDED**

**I. INTRODUCTION**

1. Plaintiff Nicole Robbins ("Plaintiff") brings this action against Defendant International Alliance of Theatrical Stage Employees, Local 492 ("Defendant" or "Local 492"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), for discrimination on the basis of sex and for adverse actions taken in retaliation, motivated by sex based bias, following Plaintiff's opposition to improper union practices and the filing of charges with appropriate administrative agencies.

RECEIVED
FEB 02 2026
Wendy R Oliver, Clerk
U.S. District Court
W.D. OF TN, Memphis

1

2. Plaintiff alleges that Defendant engaged in a pattern of disparate treatment in which female members, including Plaintiff, were subjected to adverse actions such as effective exclusion from referral opportunities, silencing, and exclusion from union governance, while similarly situated male members were treated more favorably. Defendant's conduct was motivated by sex based bias and hostility toward women who challenge union leadership, in violation of Title VII.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 2000e-5(f)(3).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as a substantial part of the events or omissions giving rise to the claims occurred within this district, Plaintiff resides and would have worked but for the unlawful practices in this district, and Defendant conducts business and represents workers within this district.

5. Plaintiff has satisfied all administrative prerequisites for filing this action. On February 22, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 494-2025-00021), alleging discrimination on the basis of sex and retaliation. The EEOC issued a Notice of Right to Sue on November 13, 2025, which Plaintiff received on or about that date. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## III. PARTIES

6. Plaintiff has been a member in good standing of Local 492 since December 2018 and is qualified to perform work within the Art Department of motion picture and television productions, including Set Decoration Buying, Set Dressing, and Properties work.

7. Defendant International Alliance of Theatrical Stage Employees, Local 492, is a labor organization within the meaning of 42 U.S.C. § 2000e(d) and (e), representing workers in the motion picture and television industry across Tennessee, Eastern Arkansas, Kentucky, and Northern Mississippi. Defendant is affiliated with the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada, AFL-CIO. Defendant's principal office is located at 310 Homestead Road, Nashville, Davidson County, Tennessee 37207. Defendant is subject to Title VII as a labor organization that affects commerce and engages in practices impacting employment opportunities.

## IV. STATEMENT OF FACTS

8. At all relevant times, Plaintiff has been qualified for union employment opportunities within her craft, possessing the skills and experience necessary to perform work in the Art Department, including Set Decoration Buying, Set Dressing, and Properties work. Despite these qualifications, Defendant repeatedly denied Plaintiff access to work referrals, placements, and other benefits of union membership, while similarly situated male members were afforded such opportunities.

9. Defendant exercises substantial influence over employment opportunities in the motion picture and television industry through both formal and informal practices. Defendant maintains separate digital systems, including a member facing roster platform and a producer access platform through which member information is made available to hiring personnel. The full roster has also been hosted online in a manner accessible outside the membership system, including versions viewable through archived public web records. Members lack transparency into how their information is presented to employers, how often it is accessed, or whether qualifications are accurately reflected. Hiring decisions frequently occur through informal channels, including communication among union leadership, department heads, and producers. Plaintiff observed, through industry practice and production crew lists, that union leadership, including the union president when serving as a department head, regularly worked with preferred crews and that hiring leads on productions relied on established crew networks that did not include Plaintiff, despite her qualifications and union status, while similarly situated male members were included.

10. Plaintiff's ability to obtain occasional commercial work did not occur through union influenced channels but through independent industry contacts. Commercial productions often operate outside the union's long form referral ecosystem and rely on informal hiring networks. Plaintiff was sometimes able to work on such projects only when her department lead, who is not a union member and who was similarly affected by Defendant's conduct, was hired independently. In contrast, for union long form film and television productions, hiring decisions were made through networks influenced by union leadership, department heads, and preferred crew pipelines. Plaintiff observed that male

4

workers she recommended, who were similarly qualified and available, for long form productions received repeated hiring opportunities through these channels, while Plaintiff herself was excluded from those same opportunities. Commercial job information was not disseminated through union systems, whereas long form union work depended heavily on informal but union influenced hiring pathways.

11. Plaintiff previously filed a charge with the National Labor Relations Board ("NLRB") concerning union practices. That matter did not proceed to final adjudication. Plaintiff's concerns regarding union governance, hiring practices, and retaliation continued thereafter and form part of the pattern of events underlying this action.

12. Following that period, Plaintiff submitted a detailed written grievance to Local 492 regarding practices she reasonably believed to be improper, including jurisdictional and governance issues across productions, instances of harassment, and concerns about incentive related practices involving visiting producers and the involvement of union leadership. Plaintiff copied union officers and representatives on this grievance. The Business Agent responded that the matter would be investigated; however, Plaintiff received no findings or follow up. Thereafter, Plaintiff experienced a significant reduction in work opportunities. This reduction followed her grievance activity and occurred under circumstances in which similarly situated male members did not experience comparable exclusion.

13. Plaintiff subsequently filed a second charge with the NLRB alleging that she was being excluded from employment opportunities. After Plaintiff followed up in writing with union leadership regarding the status of her grievance and related concerns, Defendant issued Plaintiff a certified "Do Not Contact" directive prohibiting her from communicating directly with union officers and representatives. This directive has not been rescinded and has limited Plaintiff's ability to participate in union governance.

14. After being restricted to written communication, Plaintiff participated in a members only union forum. Plaintiff's posts were repeatedly removed, and she was publicly criticized by union leadership in the presence of members and hiring personnel, negatively affecting her professional reputation.

15. Plaintiff shared publicly available IRS Form 990 financial filings relating to the union. In response, the union president stated in a members' forum that the information was unauthorized or inaccurate, characterized Plaintiff's conduct as improper, and portrayed her as threatening to the union. In contrast, a similarly situated male member who expressed interest in the same financial information was privately contacted by the union president and invited to review financial records. Plaintiff was not afforded comparable access or treatment.

16. Plaintiff engaged in protected activity by opposing practices she reasonably believed to be unlawful and by filing a Charge of Discrimination with the EEOC. Plaintiff also filed charges with the NLRB, which form part of the context in which Defendant responded to

her protected opposition.

17. Following Plaintiff's grievances and administrative filings, Defendant maintained and continued adverse treatment toward Plaintiff, including the ongoing denial of union influenced and informal work referral opportunities, continued enforcement of the "Do Not Contact" directive, repeated removal of Plaintiff's posts from union communication platforms, and ongoing hostile and dismissive treatment by union leadership.

18. Upon information and belief, Defendant treated Plaintiff less favorably than similarly situated male members who engaged in comparable conduct. This differential treatment contributed to Plaintiff's understanding that Defendant's actions toward her were motivated, at least in part, by sex based bias.

## V. CAUSES OF ACTION

### COUNT I: DISCRIMINATION ON THE BASIS OF SEX (42 U.S.C. § 2000e-2(c))

19. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

20. Plaintiff is a member of a protected class based on her sex (female). Plaintiff was qualified for the benefits, privileges, and opportunities of union membership, including access to work referrals and participation in union governance. Defendant, a labor organization within the meaning of Title VII, subjected Plaintiff to disparate treatment by denying her equal access to union participation, while similarly situated male members were afforded such access. Defendant's actions were motivated, at least in part, by

Plaintiff's sex.

21. Defendant's conduct constitutes unlawful discrimination by a labor organization in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(c).

**COUNT II: RETALIATION (42 U.S.C. § 2000e-3(a))**

22. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

23. Plaintiff engaged in protected activity under Title VII by opposing practices she reasonably believed to be unlawful discrimination and by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff also engaged in union related grievance and administrative processes, which form part of the context in which Defendant responded to her protected opposition.

24. Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including restrictions on communication with union leadership, removal of her posts from union communication platforms, public discrediting leading to continued denial of work opportunities. These actions would dissuade a reasonable person from engaging in protected activity.

25. Defendant's conduct constitutes unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

1. Declare that Defendant's conduct violates Title VII of the Civil Rights Act of 1964;
2. Order Defendant to rescind the "Do Not Contact" directive and remove barriers that restrict Plaintiff's communication with union leadership and participation in union governance;
3. Order Defendant to take reasonable corrective action to address reputational harm caused by its conduct, including issuance of a written clarification or corrective statement to union members, employers, hiring personnel, and other relevant industry participants who may have received or relied upon prior negative characterizations of Plaintiff, and to take appropriate steps to correct misinformation within the professional community affected by Defendant's statements.
4. Order Defendant to take reasonable corrective and remedial measures to prevent future discrimination and retaliation;
5. Issue appropriate injunctive relief prohibiting Defendant from engaging in further discrimination or retaliation against Plaintiff and restoring Plaintiff's access to union participation and union influenced employment opportunities on the same terms as other members;
6. Award Plaintiff back pay, lost benefits, and other economic losses caused by Defendant's conduct;
7. Award front pay in lieu of future lost employment opportunities, if reinstatement of equal referral access is not feasible;

8. Award compensatory damages for emotional distress, reputational harm, and other non-economic losses;

9. Award punitive damages as permitted by law for Defendant's reckless or malicious disregard of Plaintiff's federally protected rights;

10. Award Plaintiff a tax gross up or offset for any adverse tax consequences resulting from a lump sum award of back pay or other damages;

11. Award pre-judgment and post-judgment interest as allowed by law;

12. Award Plaintiff her costs of this action and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k); and

13. Grant such other and further relief as the Court deems just and proper.

---

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.

Respectfully submitted, this ~~30th day of January, 2026~~. 2/2/26

*[signature: Nicole Robbins]*

Nicole Robbins, *Pro Se*
1969 Poplar Avenue 6
Memphis, Tennessee 38104
NicoleRobbins@mail.com

10